(Rev 07 89)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS** Eugene A. Golebiowski, Individually and on Behalf of All Others Similarly Situated

## 304   CV 0831 - G

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF   Lee
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** ATTORNEYS (FIRM NAME ADDRESS AND TELEPHONE NUMBER)
Richard T. Phillips, Esq.
Smith, Phillips, Mitchell & Scott, LLP
P.O. Drawer 1586
Batesville, MS 38606   (662)563-4613

**DEFENDANTS** Mega Life and Health Insurance Company; United Insurance Companies Inc. [UICI] (d/b/a The Insurance Center, UGA-Association Field Services, and Enrollers for the National Association for the Self-Employed); United Group Service Centers, Inc.; UICI Marketing Inc.; Specialized Association Services Inc.; NASE Group Insurance Trust Fund; National Association for the Self-Employed a/k/a NASE; and John Does 1-20

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

RECEIVED
APR 19
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE

DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

RULE 23 CLASS ACTION UNDER U.S.C. SECTION 1332 ON BEHALF OF MEMBERS OF DEFENDANT ASSOCIATION WHO PURCHASED HEALTH INSURANCE FROM DEFENDANT INSURANCE AGENCY

## V. NATURE OF SUIT (PLACE AN x IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury – Med Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury – Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates - etc |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability | | ☐ 640 R R & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | ☐ 791 Empl Ret Inc Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS – Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Other | | | |

## VI. ORIGIN (PLACE AN x IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER F R C P 23
**DEMAND $** UNSPECIFIED
Check YES only if demanded in complaint
JURY DEMAND: ☒ YES ☐ NO

## VIII. RELATED CASE(S) (See instructions) IF ANY
JUDGE _____ DOCKET NUMBER _____

DATE 10/30/03

SIGNATURE OF ATTORNEY OF RECORD

UNITED STATES DISTRICT COURT



FILED

OCT 30 2003

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI ARLAND...CLERK
EASTERN DIVISION
BY _____
Deputy

EUGENE A. GOLEBIOWSKI, INDIVIDUALLY AND                          PLAINTIFF
ON BEHALF OF ALL OTHERS SIMILARLY SITUATED

VS.                                      CIVIL ACTION NO.  1:03CV620-D-D

MEGA LIFE AND HEALTH INSURANCE COMPANY;                          DEFENDANTS
UNITED INSURANCE COMPANIES INC. [UICI] (d/b/a
THE INSURANCE CENTER, UGA- ASSOCIATION FIELD
SERVICES, and ENROLLERS FOR THE NATIONAL
ASSOCIATION FOR THE SELF EMPLOYED); UNITED
GROUP SERVICE CENTERS, INC.; UICI MARKETING
INC.; SPECIALIZED ASSOCIATION SERVICES INC.;
NASE GROUP INSURANCE TRUST FUND;  NATIONAL
ASSOCIATION FOR THE SELF-EMPLOYED a/k/a NASE,
and JOHN DOES 1-20



RECEIVED

APR 19

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

## CLASS ACTION COMPLAINT
### (JURY TRIAL DEMANDED)

Comes now the Plaintiff, EUGENE A. GOLEBIOWSKI, individually and on behalf of all

others similarly situated, being a class as defined below of United States purchasers of

association group health insurance certificates issued by MEGA LIFE AND HEALTH

INSURANCE COMPANY through the NATIONAL ASSOCIATION FOR THE SELF-

EMPLOYED a/k/a NASE, and for cause of action against the Defendants,  MEGA LIFE AND

HEALTH INSURANCE COMPANY [hereinafter "MEGA LIFE"]; UNITED INSURANCE

COMPANIES INC. [hereinafter "UICI"]; UICI d/b/a The Insurance Center, UGA-Association

Field Services and Enrollers for the National Association for the Self Employed; UNITED

CLASS ACTION COMPLAINT                                                    Page 1

GROUP SERVICE CENTERS, INC.; UICI MARKETING  INC.; SPECIALIZED

ASSOCIATION SERVICES INC.; NASE GROUP INSURANCE TRUST FUND; and the

NATIONAL ASSOCIATION FOR THE SELF-EMPLOYED a/k/a NASE, as well as JOHN

DOES 1-20, does state as follows, to-wit:


## JURISDICTION AND VENUE

1.

This is a class action on behalf of a nationwide class for declaratory and injunctive relief

and for actual and punitive damages.  The matter in controversy for each class member exceeds

the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of

different states.  This Court has jurisdiction of the case under 28 U.S.C. §1332 based on diversity

of citizenship and jurisdictional amount.  To the extent that any class member does not satisfy the

jurisdictional amount, or that this controversy involves citizens of the state of a Defendant's

residence, the claims of such persons bear such close relations to the claims in the action within

the original jurisdiction of this Court that the Court would have supplemental jurisdiction

pursuant to 28 U.S.C. §1367.

2.

Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) & (c), the general venue

statute.  The Defendants are corporations subject to personal jurisdiction doing business within

this district and/or a substantial part of the events or omissions that give rise to the claims

occurred in this district.  Defendants are subject to personal jurisdiction here at the time the

CLASS ACTION COMPLAINT                                                   Page 2

action is commenced. This Court's contacts with the class are sufficient to exercise *in personam* jurisdiction over a nationwide class of policyholders. The Plaintiff brings this action on his own behalf and as a nationwide Class Action on behalf of all others similarly situated in accordance with Rule 23 of the Federal Rules of Civil Procedure.

## PARTIES

3.

The Plaintiff, Eugene A. Golebiowski, is an adult resident citizen of Lee County, Mississippi. Plaintiff is the purchaser and holder of a health insurance certificate issued by the Defendant Mega Life and Health Insurance Company. Said certificate was issued under a purported "group association policy" issued to and endorsed by the National Association for the Self-Employed.

4.

Defendant Mega Life and Health Insurance Company [hereinafter "Mega Life"] is a foreign insurance company organized and existing under the laws of the State of Oklahoma. Defendant Mega Life's principal place of business is located in Texas. At all times alleged herein, Mega Life was registered to do and actually doing business in the State of Mississippi. Mega Life's registered agent for service of process in the State of Mississippi is CT Corporation Systems of Mississippi, 631 Lakeland East Drive, Flowood, Mississippi 39208. Process may be served on the Defendant Mega Life by service on its registered agent at said address or by service on the Mississippi Commissioner of Insurance or otherwise as provided by Rule 4 of the Federal Rules of Civil Procedure.

CLASS ACTION COMPLAINT

Page 3

5.

Defendant United Insurance Companies Inc. [UICI] is a foreign corporation organized and existing under the laws of the State of Delaware. UICI does business as The Insurance Center, UGA- Association Field Services, and Enrollers for the National Association for the Self Employed. The principal place of business of Defendant UICI is located in Texas. UICI is not registered to do business in the State of Mississippi but at all times alleged herein was doing business in the State of Mississippi and continues to conduct a substantial business in the State of Mississippi. Said Defendant entered and continues to enter into agreements to be performed in whole or in part in the State of Mississippi, did engage and continues to engage in the marketing, solicitation, administration and servicing of insurance certificates issued in the State of Mississippi through its unincorporated divisions including The Insurance Center, UGA- Association Field Services and Enrollers for National Association for the Self Employed, and did commit and continues to commit torts in whole or in part in this state against residents of this state, including the Plaintiff herein. Defendant United Insurance Companies Inc. may be served with process in this action pursuant to Section 13-3-57, the Mississippi Long-Arm Statute, and otherwise as provided by Rule 4 of the Federal Rules of Civil Procedure. Service of process may be had on said Defendant by service upon UICI's agent of service of process in the State of Texas, Robert B. Vlach at 4001 McEwen Drive, Suite 200, Dallas, Texas 75244.

6.

Defendant United Group Service Centers, Inc. is a foreign corporation organized and existing under the laws of the State of Texas being incorporated on April 3, 1989. United Group Service Centers' principal place of business is 2121 Precinct Line Road, Hurst, Texas. Defendant United Group Service Centers, Inc. is registered to do and actually doing business in the State of Mississippi. United Group Service Centers' registered agent for service of process in the State of Mississippi is CT Corporation Systems of Mississippi, 631 Lakeland East Drive, Flowood, Mississippi 39208. Process may also be served on the Defendant United Group Service Centers by service on its registered agent at said address.

7.

Defendant UICI Marketing Inc. is a foreign corporation organized and existing under the laws of the State of Delaware. UICI Marketing's principal place of business is at 850 Cannon Drive, Hurst, Texas 76054. UICI Marketing Inc. is not registered to do business in the State of Mississippi but at all times alleged herein was doing business in the State of Mississippi. Said Defendant entered into agreements to be performed in whole or in part in the State of Mississippi, did engage in the marketing and solicitation of insurance certificates issued in the State of Mississippi, and did commit a tort in whole or in part in this state against a resident of this state. Said Defendant UICI Marketing, Inc. may be served with process in this action pursuant to Rule 4 of the Federal Rules of Civil Procedure.

8.

Defendant Specialized Association Services, Inc. is a foreign corporation organized and existing under the laws of the State of Texas. Specialized Association Services' principal place of business is at 2121 Precinct Line Road, Hurst, Texas 76054. Defendant Specialized Association Services, Inc. is not registered to do business in the State of Mississippi but at all times alleged herein was doing business in the State of Mississippi. Said Defendant entered into agreements to be performed in whole or in part in the State of Mississippi, did engage in the marketing, solicitation, and administration of insurance certificates and National Association for the Self Employed memberships sold in the State of Mississippi, and did commit a tort in whole or in part in this state against a resident of this state. Defendant Specialized Association Services, Inc. may be served with process in this action pursuant to Section 13-3-57, the Mississippi Long-Arm Statute, and Rule 4 of the Federal Rules of Civil Procedure, by service upon its officer and agent for process Ralph Wolfe at 2121 Precinct Line Road, Hurst, Texas 76054-3167.

9.

The Defendant NASE Group Insurance Trust Fund is a purported "trust" organized and existing under the laws of a state as yet undetermined. At all times alleged herein, NASE Group was doing business in the State of Mississippi. This entity does not maintain a registered agent in Mississippi but may be served with process upon Ralph Wolfe, c/o National Association for the Self-Employed, 2121 Precinct Line Road, Hurst, Texas 76054.

CLASS ACTION COMPLAINT

10.

Defendant National Association for the Self Employed a/k/a NASE is a foreign corporation organized and existing under the laws of the State of Texas. NASE's principal place of business is located at 2121 Precinct Line Road, Hurst, Texas 76054. At all times alleged herein, NASE was registered to do and actually doing business in the State of Mississippi. NASE's registered agent for service of process in the State of Mississippi is CT Corporation Systems of Mississippi, 631 Lakeland East Drive, Flowood, Mississippi 39208.

11.

Defendants John Does 1-20 are yet unknown individuals, partnerships, and/or corporations or other entities which are subject to the jurisdiction of this Court and who participated in the scheme, fraud, and other acts alleged herein.

## CLASS DEFINITION

12.

Plaintiff brings this action individually and upon behalf of a class pursuant to Rule 23 of the Federal Rules of Civil Procedure. The class upon whose behalf this suit is brought is defined as follows: All United States residents who, prior to December 31, 2002, enrolled in the National Association for the Self Employed [NASE] and purchased group association health insurance from Defendant Mega Life and Health Insurance Company issued through NASE. Excepted from the class of Plaintiffs are:

CLASS ACTION COMPLAINT                                                           Page 7

i.  Present or former officers, directors, employees or producers of the Defendants;

ii.  Purchasers, owners, and holders of the subject policies who while, represented by an attorney, previously signed a release of liability of the Defendants and/or their predecessors from responsibility on said policies concerning the subject matter or matters of this suit; and

iii.  Purchasers, owners, and holders of the subject policies who prior to certification of the Class by this Court have filed suit against the Defendants concerning policies subject to this suit alleging causes of action against the Defendants regarding the disclosure practices addressed herein.

13.

Alternatively, the Court should certify such other classes and/or subclasses as it deems appropriate.

## **RELATION OF THE DEFENDANTS**

14.

Mega Life is solely owned by UICI. Defendant UICI is the parent corporation and sole shareholder of both Mega Life, and UICI Marketing, Inc. UICI is principally owned and is controlled by its Chairman Ronald Jensen and members of his immediate family, including his adult children, through ownership of Onward and Upward, Inc. UICI is the ultimate surviving corporation of United Group Agencies, Inc., United Group Associates, Inc., United Group Trade Association, United Group Insurance Company, and United Group Companies.

15.

According to documents filed with the Securities and Exchange Commission, UICI was established to provide a vehicle for insurance agents to accumulate wealth. This was initially

accomplished through a series of reinsurance agreements between UICI with AEGON whereby UICI coinsured health insurance policies issued by AEGON. In 1997, UICI assumed all policies of health insurance previously issued by AEGON through UICI and began selling its own policies through its two principal subsidiaries, Mega Life and Health Insurance Company and Mid-West National Life Insurance Company.

16.

At the time of the transactions giving rise to this suit, UICI group association certificates issued through Mega Life were administered by a centralized unincorporated division of UICI known as the Insurance Center. The Insurance Center handles operational aspects of UICI's group association certificates including the design, underwriting, customer service, compliance, actuarial and risk management.

17.

Through its "Self-Employed Agency Division," the UICI insurance operations concentrate on the sale of health insurance policies to self employed individuals and small business people. The "Self-Employed Agency Division includes the unincorporated UGA-Association Field Services which markets Mega Life policies through a field force to certain "association groups" established by officers and employees of UICI. The principal association through which UICI and Mega Life market their policies is the National Association for the Self Employed a/k/a NASE.

CLASS ACTION COMPLAINT                                          Page 9

18.

The National Association for the Self Employed [NASE] purports to be an "independent, not for profit" association formed by and for the benefit of self employed and small business owners. NASE represents itself as independently researching and endorsing unaffiliated health insurance carriers for the benefit of its association members.

19.

NASE was established in 1981 by insurance agent Keith Wood. Wood was Ronald Jensen's former business partner and co-owner of UICI. NASE has remained since its formation under the control of UICI, its predecessors, and Jensen family owned businesses. The only health insurance policies endorsed by NASE since its establishment have been products offered by or through Jensen-owned businesses.

20.

NASE originated in Texas where state law prohibits the formation of an association solely for the purpose of marketing insurance, prohibits an association from marketing insurance unless it has been in existence for two years and requires that the consumer be informed of any relationships between the association and any insurance company endorsed by the association. NASE was formed as a "shelf corporation" to be held two years and then transformed into an "association" for the purpose of enrolling prospective purchasers "endorsed" health insurance products offered by UICI and Jenson-owned insurance sales entities.

CLASS ACTION COMPLAINT

21.

NASE Group Trust was formed by UICI and Mega Life for the purpose of being the named insured under the NASE "group policies." The "trust" is deceptively named to create the impression that it acts in a fiduciary or "trustee" capacity for the benefit of association members in connection with the "group insurance policy." In fact, the "trust" either is a mere token entity formed solely for the purpose of acting as the "insured" under the "group policy," or exists solely to allow UICI and Mega Life to completely control the insurer/insured relationship as to policyholders who purchase through NASE.

22.

At the time of the transactions giving rise to this suit, NASE was managed by Defendant Specialized Association Management. Specialized Association Management is wholly owned and controlled by Ronald Jensen and his children through Onward and Upward, Inc. Onward and Upward, Inc. is a substantial stockholder in UICI and considered a "related party" of UICI for SEC purposes. Specialized Association Management is run by Jeff Jensen, Ronald Jenson's son, and Vernon R. Wolfe, a former Officer and Director of UICI and Mega Life. Wolfe also currently serves as an undisclosed member of the NASE Board of Directors under the title Assistant Treasurer and Secretary.

23.

Defendant United Group Service Centers, Inc. is the entity responsible for training UICI agents. The officers of United Group Service Centers are the same as Specialized Association Management.

CLASS ACTION COMPLAINT

24.

Mega Life, UICI and NASE are under common control and ownership and operate as a unified business arrangement. The arrangement is designed so as to create the impression that each entity operates independently. NASE purports to be a "non-profit" association formed by the "self employed" for the purpose of advancing the interest of small business owners. In fact, NASE was formed, and is operated, by UICI and Mega Life Insurance Company as a marketing tool and profit center for the insurance company defendants.

25.

Defendants UICI and Mega Life maintain control over all health insurance products and benefits offered by NASE. UICI and Mega Life exert complete control or significant influence over NASE decisions regarding these products through their relationship with Specialized Association Management and the strategic placement of individuals associated with the UICI, Mega Life and entities owned and controlled by the Jensen family on the NASE board of directors and in officer positions.

## FACTS COMMON TO THE CLASS

26.

This suit arises from an "association/group trust" mass marketing and administration scheme devised and employed by the Defendants to sell insurance policies to the Plaintiff and members of the Plaintiff Class. Pursuant to said scheme the Defendants reap windfall profits from the sale and administration of policies sold through NASE at the expenses of, and without the knowledge of, the Plaintiff policyholders. Said scheme involves (1) the illegal concealment

and non-disclosure by the Defendants of incestuous relationships among the corporate

Defendants, as well as mutual and intertwined ownership, establishment and control of the

Defendant entities, including the National Association for Self-Employed and Mega Life, the

insurance agency whose products the supposedly independent "association" endorses; (2) the

undisclosed transfer and application by the Defendants of NASE "membership dues" and

initiation "fees" to the insurance company whose products NASE endorses, and application of

"Association Fees" to premiums and the costs of insurance in breach and violation of the terms

of the contracts between the Defendants and the Plaintiff policyholders; (3) the establishment and

administration of illusory or dry "trusts" and violation of trust duties to the Plaintiffs; and (4) use

of the "group/association" and "trust" relationships so established to (a) reap millions of dollars

of ill-gotten gains for the Defendants at the expenses of the Plaintiffs, (b) avoid effective

regulation of activities of the Defendants by state insurance regulators throughout the nation, and

(c) create and exploit insurance "death spiral" situations pursuant to which the Defendants

continually profit at the expenses of, and to the damage of, an ongoing influx and turnover of

health insurance purchasers and policyholders including the named Plaintiff and each member of

the Plaintiff class.

27.

Plaintiff and each class member, as defined herein, are or have been holders of health

insurance certificates issued by the Defendant Mega Life through the combined sales and

marketing efforts of UICI, UICI Marketing, Mega Life, United Group Service Centers,

Specialized Association Services, and NASE. Each certificate was issued as purported "group

association insurance" with the master polices being held by the NASE Group Insurance Trust. The Mega Life policies of insurance of each member of the Plaintiff Class were sold and administered by the Defendants pursuant to the Defendants' deceptive and fraudulent scheme from which this suit arises.

*1. The Defendants' Marketing Scheme*

28.

UICI's wholly owned subsidiary, UICI Marketing, Inc., is the lead generation and advertising arm of the Defendants' nationwide sales scheme. UICI Marketing generates leads by using NASE's supposedly independent endorsement of Mega Life in internet advertising, print adds, signs, direct mail, and telemarketing.[1] Defendants employ web advertisements including the NASE web page at www.nase.org which contains links for "affordable health insurance for the self employed" and invites viewers to "click here to request a free quote." When those links are highlighted, a page appears captioned "NASE. Affordable Health Insurance" that states "the group negotiating power of NASE makes it possible to offer valuable benefits to our members. One of these benefits is access to health insurance coverage. The NASE endorses several financially strong insurance carriers that offer a variety of products and plans customized to meet the special needs of the self employed individual or small business owners." The NASE web page conceals the fact that the only insurance company offered to NASE members is Mega Life

---

[1]The Defendants' print advertisements and direct mailings typically state "At Last Affordable Health & Life Insurance for the Self Employed" through The National Association for the Self Employed, and provide 1-800 numbers to call. When the number is dialed, the caller is routed by UICI Marketing's telephone center to a local NASE Field Office and UICI agent.

which is a financially related insurance company and jointly controlled with the association.

29.

Once leads are generated, UICI Marketing provides them to UICI agents and bills NASE

for generating the leads. At the time of the transactions giving rise to this suit, UICI agents

operated under the fictitious business name of "Enrollers of the National Association for the Self

Employed." This name appeared prominently on UICI field offices throughout the nation. These

field officers are, in fact, manned by insurance agents employed under contracts with UICI

through its unincorporated sales division UGA- Association Field Services. UICI agents are

trained to approach potential leads as NASE Enrollers and fellow self employed individuals, not

as the insurance agents they in fact are. Training sessions and agent newsletters by the

Defendants emphasize the importance of NASE in the marketing of insurance, identifying

NASE as "the greatest selling machine on earth." Defendants' sales training tapes emphasize

that "the NASE approach increases sales and increases persistency."[2]

30.

The UICI agent "enrollment applications" are actually insurance application forms. The

agents collect the first month's payment, including an "association initiation fee" (also known as

an association registration fee), and "association dues," in addition to the first month's premium

---

[2]Defendants' training materials state: "If you position yourself properly and again, we've learned as a fellow self-employed person and NASE enroller, you're a lot more empathetic with them. You're an assistant buyer. You're a consultant to them and they appreciate that. And, you know, it feels like much lower pressure presentation. The whole temperature of a presentation is different, isn't it, if we're in there as a NASE enroller as opposed to an insurance agent." UICI agents are also furnished with brochures which emphasizing NASE membership and its endorsement of Mega Life.

payment. The "initiation fee" is represented to be a one time payment for joining NASE. In fact, the initiation or registration fee, as well as portions of the NASE association dues, were treated by the Defendants as *undisclosed premium payments*. Said association "fees" and "dues" were, in fact, a cost of insurance added by the Defendant insurance companies to premium payments.

31.

Defendants' association/group trust arrangements are designed to conceal the true nature of the business relationship between the supposedly independent association and the insurance company. The arrangement represents NASE as an independent entity that evaluates various insurance policies in order to obtain the best available "group insurance." In fact, the association, trust and insurance company are jointly owned and/or controlled and the only health insurance made available to NASE members are Mega Life products.

32.

Insurance Departments throughout the nation have adopted regulations designed to prevent this deception by requiring an insurer to disclose proprietary interests in and control of associations endorsing their products. State Regulations, based on standard NAIC recommendations, state in pertinent that advertisements "shall not state or imply that an insurer or a policy has been approved or endorsed by any ... association ... unless such is the fact, and unless any proprietary relationship between an organization and the insurer is disclosed. If the entity making the endorsement or testimonial has been formed by the insurer or is owned or controlled by the insurer or the person or persons who own or control the insurer such fact shall

CLASS ACTION COMPLAINT                                                                Page 16

be disclosed."[3] Instead of disclosing the relationships as required by law, Defendants engage in the active concealment and misrepresentation of these relationships. Defendants affirmatively conceal this information from the general public and prospective purchasers through the use of management agreements with controlled entities such as Specialized Association Management, and contractual agreements between former executives and agents.

33.

The Defendants conceal and do not disclose to purchasers, as required by law, the relationship between the endorsing association (NASE) and the other Defendants in this case, including the insurance company whose products are being endorsed. Defendants represent that the Mega Life health insurance policies are "endorsed" by NASE, which is presented by the Defendants as an independent association. Defendants, however, concealed and failed to disclose to the Plaintiff the proprietary and control relationship existing between the endorsing association and the other Defendant entities that had formed and control the association. Defendants also conceal and fail to disclose the transfer among the Defendant entities of association "fees" and funds paid by members of the Plaintiff class.

34.

The Defendants' concealment and failure to disclose the aforesaid relationships and facts, among others, which Defendants know may justifiably induce members of the Plaintiff class to purchase Mega Life insurance policies subjects the Defendants to the same liability to the

---

[3]See, e.g. Mississippi Department of Insurance Regulation LA&H 74-3.9; and Texas Administration Code, Title 28, Insurance, §21.107(d).

Plaintiff and the members of the Plaintiff class as though the Defendants had affirmatively represented the non-existence of said facts, said Defendants being under a duty to disclose the aforesaid matters.

### 2. Mis-appropriation of "Association Fees"

35.

NASE and the other Defendants represent that NASE is an "independent, not for profit" association formed by and for the benefit of self-employed and small business owners. In fact, NASE generates millions of dollars in profits which are funneled to the insurance company-Defendants and UICI-owned entities through (1) the payment of services fees on management agreements and (2) fraudulently concealed premium payments.

36.

The Defendants ensure that the association will be "not for profit" by transferring association funds to and among the other Defendants which maintain control over the association's accounts. All profits are removed from the association, thereby generating income for Mega Life and UICI. The existence of such agreements among the Defendants is concealed from consumers, including the Plaintiff and class members herein. Said consumers are affirmatively denied the opportunity to discover the arrangements by the terms of proxies drafted by the Defendants pursuant to which Association members relinquish their right to obtain information about the association's finances.[4]

_____

[4]Members of a *legitimate* association are notified of, and given the opportunity to participate in, regularly scheduled meetings where the membership votes to elect officers and are informed of executive decisions. In sham arrangements, such as the ones organized by the

CLASS ACTION COMPLAINT                                                        Page 18

37.

The NASE "enrollment applications" are actually insurance application forms. The UICI agents collect the first month's payment including an "association initiation fee" (also known as an association registration fee) and "association dues" in addition to the first month's premium payment. The "initiation fee" is represented to be a one time payment for joining NASE. In fact, the initiation or registration fee, as well as portions of the NASE association dues, were treated by the Defendants as *undisclosed premium payments*. Said association "fees" and "dues" were added by the Defendant insurance companies to premium payments.

38.

UICI and Mega Life's collection of association dues and initiation fees as concealed premium payments is in direct conflict with the language of the health insurance policies issued to the members of the Plaintiff class. Each such policy purports to state the premiums in the "Certificate Schedule." Each policy further states that premiums are based on "the applicable table of premium rates." There is no provision in the policy or in the UICI and Mega Life's "table of premium rates" for inclusion of the initiation/registration fee or "association dues," or any part thereof, as premium payments. The Defendants mis-application of association fees and dues constitutes a breach by Mega Life and UICI of the contracts of insurance between Mega Life and the members of the Plaintiff class.

---

Defendants, efforts are made to conceal the relationships and financial inter-mingling of funds and to insure that association "members" do not have access to accurate information which would reveal the true nature of the Defendants' arrangements and dealings.

CLASS ACTION COMPLAINT                                                                 Page 19

### 3. Violation of Trust Duties

39.

NASE Group Trust was formed by UICI and Mega Life for the sole purpose of being the "named insured" under the NASE "group policy." The NASE Group Insurance Trust was and is, in fact, an "illusory" or "dry" trust established solely for the purpose of furthering the Defendants fraudulent health insurance scheme throughout the U.S. with the administration and control of the trust and the policies being assigned to Mega Life and UICI.

40.

Pursuant to the Defendants' "Association/Group Trust" marketing and administration scheme Mega Life issues master "group policies" to the NASE Group Trust which issues only "certificates" to individual insurers, including the members of the Plaintiff class. This procedure enables the insurance company to insulate the insurer/insured relationship from the Plaintiff "certificate holders" so that Mega Life and the "trust" may modify the policy and otherwise bypass more stringent regulations applicable to individual health insurance policies.

41.

The Plaintiffs, including the named Plaintiff and each member of the Plaintiff class, are or have been holders of health insurance certificates to purported "Group Association policies" held by the NASE Group Insurance Trust. All NASE participating members, including the Plaintiffs herein, are trust beneficiaries under the NASE Group Trust. Mega Life, UICI, and the other corporate Defendants have assumed the trustee's discretionary, fiduciary duties, including responsibilities for providing the management administration of the insurance programs for the

NASE membership and performing such functions as may be necessary for the maintenance of those programs. Mega Life, UICI, and the other corporate Defendants, misused and abused the trust relationship by charging additional premiums, improperly transferring and applying association fees and dues, thereby preventing NASE participating members from gaining access to competitive insurance products. This course of conduct, and the acts described in the preceding paragraphs of this Complaint, breached fiduciary duties of Mega Life, UICI, and the other corporate Defendants, said Defendants having assumed the discretionary, fiduciary duties of the trustee and the trust by the acts alleged herein.

42.

NASE, on behalf of itself and its participating members, including the Plaintiff and all members of the Plaintiff class, delegated to Mega Life, UICI, and the other corporate Defendants as the agents the management and administration of the NASE insurance programs. Said Defendants assumed control over the management and administration of said programs including the exchange and transfer of administrative fees, association dues, and other funds of the Plaintiffs and the policies held and administered by the trust. Said arrangement created an agency relationship between NASE and its participating members, including the Plaintiffs in this action, on the one hand, and Mega Life/UICI and the other corporate Defendants, on the other, as well as a fiduciary relationship with fiduciary obligations and duties by said Defendants to the association member/policyholders who are members of the Plaintiff class. The acts of the Defendants, as alleged in this Complaint, constitute actionable violation of the trust and fiduciary duties owed by the Defendants to the Plaintiffs under said arrangement.

*4. The "Death Spiral"*

43.

The Defendants materially suppressed and affirmatively concealed true and accurate information regarding the transactions between the Defendants and the Plaintiffs, as described above, for the intentional purpose of inducing the plaintiffs to purchase association memberships and health insurance policy certificates. Said actions were part of a calculated and conscious "death spiral" scheme on the part of the Defendants.

44.

The undisclosed application by the Defendants of the Plaintiffs' Association Dues and Fees to offset premiums and cost of insurance in the Plaintiffs policies helped enable the Defendants to illustrate and charge "teaser rates" which were artificially low and set at an amount below that which would be actuarially recommended. These "teaser rates" were utilized by the Defendants to induce customers into believing that the offered insurance was actually bargain priced as a result of the Association's "group buying power." Defendants knew at the time of sale that the premiums were artificially low and were less than those that would be required to carry the Plaintiffs' policies over time.

45.

The sales by the Defendants to the Plaintiffs were made pursuant to the improper and deceptive means alleged in this Complaint for the purpose of putting on the books of the insurance company Defendant books of business intentionally set for an insurance "death spiral." The "death spiral" causes insurers with health problems to become isolated and eventually

CLASS ACTION COMPLAINT

Page 22

eliminated from the Defendants' insured population. Defendant Mega Life designs its premiums so that they will escalate over time causing the policy to become uncompetitively expensive and initiating the "death spiral." In a "death spiral" the policyholder population continually shifts to eliminate insureds who have had policies for a period of time. This insures a continual influx of insureds who are subject to waiting periods and contestability.

## CONDUCT AS TO THE CLASS REPRESENTATIVE

46.

Plaintiff Eugene Golebiowski is a 54 year old resident of Tupelo, Mississippi. Mr. Golebiowski was employed as a metallurgical engineer with Muller Industries until August of 2000. In August of 2000, Mr. Golebiowski left Muller Industries and became an independent consultant. At the time of his resignation, Mr. Golebiowski was covered by a group health insurance policy through Muller Industries. Plaintiff maintained his coverage under this policy for the eighteen (18) months as allowed by COBRA.

47.

In December of 2001, Plaintiff was seeking a health insurance policy to replace his COBRA benefits. While looking for various alternatives, Plaintiff saw a newspaper advertisement for NASE in the Tupelo Daily Journal. The advertisement stated "At Last Affordable Health & Life Insurance for the Self Employed" through The National Association for the Self Employed, and provided a telephone number for individuals interested in insurance to call. Plaintiff called this number and was put in contract with the local NASE Enroller, William Phipps. Phipps made arrangements for Mr. Golebiowski to meet him at the NASE

Office in Tupelo, Mississippi.

48.

On January 18, 2001, Mr. Golebiowski met Phipps at the NASE Office in Tupelo, Mississippi. At this meeting, Phipps represented himself to be a NASE Enroller, and made a sales presentation to Mr. Golebiowski concerning NASE. Phipps represented that NASE was an independent business organization founded for the purpose of representing self employed and small business people like Mr. Golebiowski. Phipps further represented that NASE had several hundred thousand members, and because of its size NASE was able to obtain discount rates on insurance for its members. Phipps presented Mr. Golebiowski with sales pamphlets containing these same representations and stating:

### Endorsed Health Benefits

### Your NASE Membership Keeps Working For You

The NASE is continually researching quality benefit programs for you.
Your Membership in NASE makes it possible for us to negotiate valuable benefits at competitive rates.
....

### The Associations Commitment To You

Your association has long recognized the need for affordable no-nonsense healthcare coverage for the "little guy." Your Association is committed to making quality healthcare benefits available to you.
...

### Your Associations Endorsed Carrier

Your association endorses The MEGA Life and Health Insurance Company to provide health care protection to its members. MEGA's financial resources and dedication to service have made the Company an industry leader in protecting association members across the nation.

CLASS ACTION COMPLAINT                                             Page 24

49.

Mr. Golebiowski told Phipps that he was currently covered by his former employer's health insurance policy and wanted a similar policy that would cover him, his wife and daughter. Phipps recommended a PPO plan offered by NASE through Mega Life along with a Dental Plan and a Vision Plan. Phipps quoted Mr. Golebiowski a premium rate and told him that he had to join NASE to qualify for the coverage. Phipps stated that NASE membership required a one time initiation fee with NASE and monthly dues in the amount of $8.00 to NASE.

50.

Mr. Golebiowski agreed to purchase the policy and executed the NASE Enrollment Application on January 18, 2001. Mr. Golebiowski tendered a check in the amount of $669.00. The initial premium for the PPO plan was $492.00. The Dental plan was $46.00 and the Vision Plan premium was $7.00. The remainder of the first payment represented the initiation fee and $8.00 NASE dues payment.

51.

The Plaintiff's certificate, being Certificate Number 733228478, was issued with an effective date of February 1, 2002. Plaintiff's certificate of insurance references Group Policy Number 00386 and identifies NASE Group Insurance Trust as policyholder of said policy.

52.

At no time did Phipps or the Defendants in this case disclose to Mr. Golebiowski: (1) that the NASE "Enroller" Phipps was an insurance agent under contract with UICI; (2) that there existed a proprietary relationship between NASE and Mega Life and/or UICI; (3) that NASE was

CLASS ACTION COMPLAINT

Page 25

controlled by Mega Life and UICI; or (4) that the retained "initiation fee" and "dues" were undisclosed premium charges to go to Mega Life and the other defendants. Defendants intentionally concealed this information at the time of the sale and in documents received after the sale.

53.

On or about January 30, 2002, Mega Life issued to Eugene Golebiowski a Preferred Provider Organization Plan, Certificate Number 733228474, for the policy which insured the Plaintiff, his wife and their minor child. The policy was accompanied by a letter dated January 30, 2002, from the Insurance Center on Mega Life letterhead which was signed by the Vice President of New Business/Underwriting of Mega Life. The letter stated in pertinent part:

> For your convenience, your billing amount will include charges for your insurance as well as any optional benefits chosen and your Association dues, if applicable. Please note the premium for each of the coverage(s) plans issued is stated on the Schedule Page of the enclosed document(s).

The initial premium for Mr. Golebiowski's PPO Plan as disclosed on the Certificate Schedule was $492.00.

54.

After receipt of the policy, Mega Life began drafting Mr. Golebiowski's personal checking account for the amount of $553.00 per month. This draft included Mr. Golebiowski's premium for the PPO plan in the amount of $492.00, premium for the Dental plan in the amount of $46.00, premium for the Vision plan in the amount of $7.00, and NASE monthly dues in the amount of $8.00. The premium drafts remained unchanged until November 1, 2002.

55.

In September of 2002, Plaintiff received a form letter from the Insurance Center on Mega Life letterhead informing him that his insurance premiums on the PPO plan were increasing from $492.00 per month to $530.00 per month effective November 1, 2002. The reason given for this increase was to allow Mega Life "to be able to pay future claims." Following this letter Mega Life began drafting Mr. Golebiowski's personal checking account in the amount of $591.00 in November of 2002.

56.

In April of 2003, Plaintiff received a form letter from the Insurance Center on Mega Life letterhead informing him that his insurance premiums on the PPO plan were increasing from $530.00 per month to $618.00 per month effective June 1, 2003. The reason given for this increase was to allow Mega Life "to be able to pay future claims." Following this letter Mega Life began drafting Mr. Golebiowski's personal checking account in the amount of $618.00 in June of 2003.

57.

The sale to the named Plaintiff, the administration of the Plaintiff's policy and certificate and association funds, and the increases in the named Plaintiff's premiums, were all made as a part of the Defendants' deceptive scheme as alleged above, as were the sales and administration of the policies, premiums, and association fees of all members of the Plaintiff class.

## CLASS ALLEGATIONS

### *Rule 23(b)(1)*

58.

This case is appropriate for class certification under Rule 23(b)(1)(A) of the Federal Rules of Civil Procedure. The facts of this case are such that the prosecution of separate actions by the individual members of the Plaintiff Class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the Defendants disclosure practices and pricing practices. The Defendants are required by the terms of the health insurance contracts to deal with all members of the class in the same way as to disclosure and pricing practices; The relief sought in this action includes a combination of both injunctive and monetary relief as a result of such practices; Other individual suits have already been filed relating to such practices, and even more realistically can be expected to be filed.

### *Rule 23(b)(2)*

59.

The facts of this case are also such that the Defendants have acted on grounds generally applicable to the class, thereby making appropriate final injunctive relief with respect to the class as a whole. Final relief of an injunctive nature settling the legality or illegality of the behavior of the Defendants with respect to the class as a whole is appropriate. The relief sought in this action is primarily injunctive and the money damages sought are incidental or ancillary to the primary prayer for injunctive relief. The money damages sought are (1) actual damages arising from

violation by Defendants of disclosure and pricing obligations under a common insurance

regulations adopted by all states, and (2) punitive damages, both of an equitable nature and

secondary to the general scheme of injunctive relief being sought herein. The case, thus, is also

appropriate for class certification under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

### *Rule 23(b)(3)*

60.

The facts of this case are also such that questions of law or fact common to the members

of the class predominate over any questions affecting only individual members, and a class action

is superior to other available methods for the fair and efficient adjudication of the controversy.

The case is appropriate for class certification under Rule 23(b)(3) of the Federal Rules of Civil

Procedure.

61.

Plaintiff and each class member purchased a Mega Life policy, paid NASE dues and

initiation fees (also called association registration fees), and incurred premium increases based

upon facts concealed by and/or controlled by Defendants in the marketing, administration and

servicing of Mega Life policies and NASE memberships. Defendants, for instance:

    (a)    Concealed that NASE was formed for and is a marketing tool of UICI and Mega

        Life and does not evaluate, compare or consider any other insurance for its

        members;

    (b)    Concealed the common ownership/control among the Defendants and deceptively

        represented the Defendants were separate and independent;

CLASS ACTION COMPLAINT                                                 Page 29

(c)     Concealed that initiation fees and association dues were in fact undisclosed

premium payments representing a cost of selling the policies; and

(d)     Concealed that premium rate increases were not needed to pay future claims as

stated in form letters delivered to the class, but were in fact an attempt to increase

operating income of UICI and Mega Life.

62.

Questions of law or fact common to the Class which predominate over any questions

affecting only individual members include, among many others, the following:

(a)     Whether the Defendants breached their duty to disclose the proprietary and

financial relationship between UICI, Mega Life, and NASE;

(b)     Whether the Defendants fraudulently concealed the  proprietary and financial

relationship between UICI, Mega Life, the Jensen family and NASE;

(c)     Whether the Defendant Mega Life breached the terms of its insurance agreements

by charging premiums beyond the amount disclosed on its policy schedule pages;

(d)     Whether the Defendants fraudulently concealed that initiation fees (also known as

association registration fees) and association dues were undisclosed premium

charges;

(e)     Whether the Defendant UICI and Mega Life should refund premium reserves

computed on the "original incurred date" basis where said reserve method has

now been changed resulting in a $4.8 million increase in operating income;

(f)     Whether the Defendants engaged in a deliberate course of fraudulent and deceptive conduct in their disclosure and insurance pricing practices;

(g)     Whether Defendants disseminated false and deceptive advertising and sales material designed to conceal the true purpose of NASE;

(h)     Whether the Defendants disseminated false and deceptive advertising and sales material designed to induce sales of UICI and Mega Life health insurance policies by representing that NASE as an independent organization formed for the purpose of representing small business persons;

(i)     Whether the Defendants disseminated false and deceptive advertising and sales material designed to induce sales of UICI and Mega Life health insurance policies by representing that NASE used its group buying power to negotiate discount rates;

(j)     Whether Defendants disseminated false and deceptive advertising and sales material designed to conceal the true relationship between NASE, Mega Life, UICI, and the Jensen family;

(k)     Whether the Trust agreements between NASE, NASE Group Trust, Mega Life and/or UICI impose fiduciary duties upon Mega Life and UICI through NASE and NASE Group Trust's abrogation and assignment of duties to Mega Life and/or UICI;

(l)     Whether the actions of the Defendants with regard to the sale and servicing of class members policies, and concealment and/or lack of disclosure to members of

CLASS ACTION COMPLAINT                               Page 31

the Plaintiff Class with regard to said products constitutes actionable misconduct giving rise to an action for damages for fraud, intentional misrepresentation, fraudulent inducement, fraudulent concealment, breach of contract, negligence, and/or fraudulent and deceptive sales practices, and whether the said actions of the Defendants were of such a nature as to render the Defendants liable for punitive damages in an amount sufficient to punish the wrongdoers, to deter like conduct by the Defendants in the future, and to serve as an example to deter similar conduct by others.

63.

This action is properly brought as a class action under Rule 23 of the Federal Rules of Civil Procedure for the following reasons:

    (a)    The Class consists of thousands of persons and is thus so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;

    (b)    The questions of law and fact common the Class predominate over any questions affecting only individual members;

    (c)    The claims asserted by the Plaintiff are typical of the claims of the members of the Class;

    (d)    Plaintiff will fairly and adequately protect the interests of the Class, and the Plaintiff have retained attorneys experienced in complex life insurance litigation; and

CLASS ACTION COMPLAINT                                            Page 32

(e) A class action is superior to other available methods for the fair and efficient adjudication of this controversy for the following reasons, among others:

(i) Given the size of individual Class members' claims, and the complexity of the actuarial and other issues involved in this litigation, few, if any class members could afford to seek legal redress individually for the wrongs of Defendants committed against them;

(ii) This action will cause an orderly and expeditious administration of the claims of the Plaintiff Class, economies of time, effort and expense will be fostered and uniformity of decisions will be insured;

(iii) Other available means of adjudicating the claims of the Plaintiff and members of the Class -- such as thousands of individual actions brought separately and pursued independently in state and federal courts across the country -- are impracticable and inefficient;

(iv) Without a class action, many members of the Plaintiff Class will continue to suffer damages and Defendants' violations of law will proceed without remedy while Defendant continues to retain and reap the proceeds of its wrongful conduct;

(v) When the liability of Defendants have been adjudicated, damage claims of all members of the Class can be determined by the Court;

(vi) This action presents no difficulties that would impede management by the Court as a class action.

Class certification, thus, is appropriate under either Rule 23(b)(1)(A), 23(b)(2), or 23(b)(3) of the Federal Rules of Civil Procedure.

## CAUSES OF ACTION

64.

Causes of action are stated against each of the Defendants on behalf of the Named Plaintiff and all members of the Plaintiff Class for fraudulent concealment, breach of contract, common law liability for actual and punitive damages for non-disclosure, breach of fiduciary and trust duties, civil conspiracy, unjust enrichment, violation of applicable deceptive advertising and trade practices acts, and for other equitable relief as requested herein, including declaratory and injunctive relief.

## COUNT I:
## FRAUDULENT CONCEALMENT

65.

The allegations of Paragraphs 1 through 64, above, are repeated and incorporated in this Count as though fully copied herein. The Defendants fraudulently and intentionally concealed material facts from the Plaintiffs for the purpose of inducing the Plaintiffs to purchase insurance pursuant to the Defendants' deceptive insurance marketing and administration scheme. Said concealment by the Defendants was calculated, willful and intentional and renders the Defendants liable to the Plaintiffs for actual and punitive damages as though the Defendants had affirmatively stated the non-existence of the matters the Defendants concealed. The acts of the Defendants as aforesaid render Defendants liable to the Plaintiffs and causes of action are hereby stated for fraudulent concealment, fraud and deceit.

CLASS ACTION COMPLAINT                                                    Page 34

## COUNT II:
## BREACH OF CONTRACT

66.

The allegations of Paragraphs 1 through 64 are repeated and incorporated in this Count as though fully copied herein. The actions of the Defendants, including the transfer and mis-appropriation of association dues and fees to premiums and profits of the insurance company and other defendants constitute breach of contract and conversion. Plaintiffs hereby state such causes of action against the Defendants for actual and punitive damages, as well as appropriate restorative, equitable and injunctive relief, for conversion and breach of contract.

## COUNT III:
## COMMON LAW LIABILITY FOR NON-DISCLOSURE

67.

The allegations of Paragraphs 1 through 64, above, are repeated and incorporated in this Count as though fully copied herein. The above stated facts and the Defendants' mass marketing and insurance administration scheme were known to the Defendants at the time of the sales to the Plaintiff and each member of the Plaintiff Class. As a part of the Defendants' scheme, said facts were concealed from the Plaintiffs and not disclosed by the Defendants to the Plaintiffs at the time of sale or thereafter, although Defendants knew that said facts could justifiably induce the Plaintiffs to refrain from purchasing the policies of insurance. The Defendants were under a duty to disclose said matters and the failure of the Defendants to disclose said facts to the Plaintiffs subject the Defendants to common law liability as though they had affirmatively misrepresented the existence of said matters.

CLASS ACTION COMPLAINT                                                                 Page 35

68.

The Plaintiff and each member of the Plaintiff Class allege a cause of action against the Defendants and each of them for common law liability for non-disclosure, and seek actual and punitive damages and appropriate injunctive relief, as set forth herein.

## COUNT IV:
## BREACH OF FIDUCIARY AND TRUST DUTIES

69.

The allegations of Paragraphs 1 through 64 are repeated and incorporated in this Count as though fully copied herein. Plaintiffs are trust beneficiaries and stand in a relationship of trust and confidence with the Defendants NASE and the NASE Group Trust. The facts alleged above constitute a breach and violation of the fiduciary and trust duties of said Defendants to the Plaintiffs, for which a cause of action is hereby stated.

70.

Defendants, UICI, Mega Life and the other corporate defendants assumed management and control of the discretionary and fiduciary functions of NASE and the NASE Group Trust, including responsibilities for management and administration of the Plaintiffs' insurance policies, thereby stepping into the shoes of fiduciaries and assuming fiduciary duties as to the Plaintiffs.

71.

Mega Life, UICI, and the other corporate Defendants, misused and abused the trust relationship to charge additional premiums, improperly transfer and apply association fees and dues, and prevent NASE participating members from gaining access to competitive insurance

CLASS ACTION COMPLAINT                                                          Page 36

products. This course of conduct, and the concealment by the Defendants of facts alleged in this Complaint, breached fiduciary and trust duties of the Defendants to the Plaintiffs. Causes of action are hereby stated against each of the Defendants for breach and violation of the Defendants' trust and fiduciary duties to the Plaintiffs.

## COUNT V:
## CIVIL CONSPIRACY

72.

The allegations of Paragraphs 1 through 64 are repeated and incorporated in this Count as though fully copied herein. The acts of the Defendants, as aforesaid, constitute a civil conspiracy giving rise to a cause of action for civil conspiracy which cause of action is hereby stated as to each of the Defendants.

## COUNT VI:
## UNJUST ENRICHMENT

73.

The allegations of Paragraphs 1 through 64 are repeated and incorporated in this Count as though fully copied herein. The Defendants obtained funds and profits from the Plaintiffs by fraud and the taking of undue advantage of the Plaintiffs in the manners set forth in this Complaint. Said actions of the Defendants give rise to a cause of action behalf of the Plaintiff Class under the equitable remedy of unjust enrichment, which cause of action is hereby stated.

## COUNT VII:
## VIOLATION OF DECEPTIVE ADVERTISING
## AND TRADE PRACTICES ACTS

74.

The allegations of Paragraphs 1 through 64 are repeated and incorporated in this Count as though fully copied herein. The actions of the Defendants as alleged above are in violation of statutory sections of applicable Deceptive Trade Practices Act or acts, including the Texas Deceptive Trade Practices Act, §§ 17.46(a), and (b)(2) and (5) and other applicable provisions of the Texas Business and Commercial Code. The conduct of the Defendants in the handling of the Plaintiffs' business as aforesaid constitutes an unconscionable course of action in violation of applicable Deceptive Advertising and Trade Practices Acts, including Texas Business & Commercial Doe Ann. § 17,50. Defendants committed the aforesaid violations of DTPAs knowingly and intentionally, giving rise to liability for punitive as well as actual damages, for which causes of action are hereby stated.

## COUNT VIII:
## DECLARATORY JUDGEMENT, INJUNCTIVE AND
## OTHER EQUITABLE RELIEF

75.

The allegations of Paragraphs 1 through 64 are repeated and incorporated in this Count as though fully copied herein. The facts of this case demonstrate the existence of an actual controversy, show standing and ripeness, and establish that a declaratory judgment will serve the useful purpose of settling the legal relations in issue between the members of the Plaintiff Class and the Defendants.

CLASS ACTION COMPLAINT                                                          Page 38

76.

Plaintiffs pray for a *declaratory judgment* pursuant to 28 U.S.C. §2201, the Declaratory Judgment Act. The relief sought under said Act is a judgment on behalf of the Plaintiff Class declaring that the practices of the Defendants alleged above violate the terms of the Plaintiffs contracts of insurance with Mega Life; that the Defendants failed to comply with the terms of said contracts of insurance when they applied association fees and dues to the premium costs of insurance without advising the members of the Plaintiff Class; and that the Defendants otherwise violated their duties to the members of the Plaintiff Class, including trust and/or fiduciary duties and statutory and common law duties as set forth in the preceding paragraphs of this Complaint.

77.

Plaintiffs also seek on behalf of the Plaintiff Class preventive and prospective *injunctive relief* in the form of an order of the trial court ordering the Defendant Mega Life to comply with the terms of its contracts of insurance with the members of the Plaintiff Class and enjoining Mega Life, NASE, the NASE Group Trust, and the other Defendants from mishandling, mis-appropriating and transferring without the permission or knowledge of the Plaintiffs the funds, fees and expenses paid by the members of the Plaintiff Class. Such relief is necessary in that there exists no other adequate remedy at law to prevent the Defendants from continuing or resuming the improper practices alleged above.

78.

By way of restorative injunctive relief, incidental to the declaratory judgment and prospective injunctive relief sought above, Plaintiffs seek on behalf of the Plaintiff Class a mandatory injunction compelling the Defendants to credit to the accounts of the Class Members the appropriate accumulation funds and/or credits for amounts mis-appropriated from said accounts. Said relief is incidental to the declaratory and injunctive relief sought herein, and flows directly from obligations and liability to the class as a whole on the claims forming the basis of the injunctive and declaratory relief. Such incidental restorative injunctive modification of the accounts and policies of the Class Members is capable of computation by means of objective mathematical standards, is not dependent on any intangible, subjective differences among class members or their circumstances, and will not require any separate hearings or litigation between the Defendants and any individual Class Member.

79.

The Plaintiff and members of the Plaintiff Class seek such other injunctive and declaratory relief as the Court deems proper including a ruling from this Court enjoining the Defendants from: (a) soliciting health insurance policies as endorsed by NASE without disclosing that NASE was established for the purpose of selling insurance and disclosing the proprietary and controlling interest UICI, Mega Life and their related parties have in NASE; and (b) collecting initiation fees and association dues as undisclosed premium payments. Plaintiffs also seek an Order of this Court requiring said Defendants to comply with the terms of Mega Life's policies concerning premium charges and ordering that said Defendants be disgorged of

NASE initiation fees and association dues, and the premium rate increases represented by the

Defendants as necessary for Mega Life "to be able to pay future claims."

80.

By virtue of the relationship between the Defendants and the members of the Plaintiff

Class, and the facts alleged above, equity requires that a constructive trust be established over the

monies paid by the Plaintiffs and other members of the Plaintiff Class, including initiation fees,

association dues, and premium rate increases, and other fees charged by Defendants. Defendants

should be ordered to re-credit the Plaintiffs' accounts with fees, association dues, and premium

rate increases, and other fees charged by Defendants in excess of the premiums stated on the

schedule pages of the Plaintiffs' policies. Plaintiffs pray for such other and further equitable

relief as the Court deems proper.

## **RELIEF**

81.

The relief sought by the Plaintiffs in this case includes the declaratory, injunctive and

equitable relief identified in paragraphs 75 through 80, above, including a declaratory judgment

pursuant to 28 U.S.C. §2201, the Declaratory Judgment Act, declaring (1) that the practices of

the Defendants violate the terms of the Plaintiffs contracts of insurance with Mega Life; (2) that

the Defendants failed to comply with the terms of said contracts of insurance when they used

association fees and dues as premium costs of insurance without so advising the members of the

Plaintiff Class; and (3) that the Defendants otherwise violated their duties to the members of the

Plaintiff Class, including trust and/or fiduciary duties as set forth in the preceding paragraphs of

this Complaint.

82.

Plaintiffs also seek on behalf of the Plaintiff Class prospective and restorative injunctive relief in the form of (1) an Order of the Court enjoining Mega Life, NASE, the NASE Group Trust, and the other Defendants from mishandling, mis-appropriating and transferring without the permission or knowledge of the Plaintiffs, and in violation of the terms of the Plaintiffs' contracts, funds, fees and expenses paid by the members of the Plaintiff Class; (2) by way of restorative injunctive relief incidental to the declaratory judgment and prospective injunctive relief, a mandatory injunction compelling the Defendants to credit the accounts of the Class Members the amounts funds mis-appropriated from said accounts. The Plaintiff and members of the Plaintiff Class seek other injunctive and declaratory relief including an order enjoining the Defendants from soliciting health insurance policies "endorsed" by NASE without disclosing the relationship between NASE, UICI and Mega Life. Plaintiffs also request that the Defendants be disgorged of the initiation fees, association dues, and premium rate increases represented by the Defendants as necessary for Mega Life "to be able to pay future claims," and that a constructive trust be established over the monies paid by the Plaintiffs and other members of the Plaintiff Class, including initiation fees, association dues, and premium rate increases, and other fees charged by Defendants, together with such other and further equitable relief as the Court deems proper.

83.

Each member of the Plaintiff Class has incurred *actual damages* as a result of the Defendants' wrongdoing, as aforesaid, which damages are capable of independent, objective mathematical computation. The Plaintiffs should be awarded actual damages in such amounts as are sufficient to compensate in full the Plaintiff and all members of the Plaintiff Class for the losses and damages actually incurred as a result of the Defendants' wrongdoing, including all costs and expenses incurred in the prosecution of this case.

84.

The actions of the Defendants, as alleged aforesaid, were wilful and intentional and constitute fraud, fraudulent concealment, and violation of statutory and common law duties, including duties of trust. Said actions include intentional and/or grossly negligent actions rendering the Defendants liable for punitive, as well as actual, damages. The misrepresentations, omissions and concealment of material facts by the Defendants were intentional and deliberate acts, and were part of a willful scheme or course of conduct whereby the Defendants sought to and did induce the Plaintiffs and members of the Plaintiff Class to pay initiation fees, dues and incur other costs and expenses on the basis of said fraudulent misrepresentations and omissions material facts. Said acts on the part of the Defendants constitute intentional, willful and fraudulent conduct on the part of the Defendants rendering the Defendants liable for punitive damages, as well as for attorneys fees and expenses incurred in pursuing this litigation.

85.

The Defendants should be assessed with punitive damages in an amount sufficient to punish the Defendants, to deter like conduct by the Defendants in the future, and to serve as an example to deter others from engaging in similar deceptive conduct with regard to the sales and servicing of association group insurance policies and disclosure with regard thereto.

## PRAYER

WHEREFORE, the Plaintiff, EUGENE GOLEBIOWSKI, individually and on behalf of all others similarly situated, sues and demands judgment against the Defendants, MEGA LIFE AND HEALTH INSURANCE COMPANY; UNITED INSURANCE COMPANIES INC. [UICI] (d/b/a THE INSURANCE CENTER, UGA- ASSOCIATION FIELD SERVICES, and ENROLLERS FOR THE NATIONAL ASSOCIATION FOR THE SELF EMPLOYED); UNITED GROUP SERVICE CENTERS, INC.; UICI MARKETING INC.; SPECIALIZED ASSOCIATION SERVICES INC.; NASE GROUP INSURANCE TRUST FUND; NATIONAL ASSOCIATION FOR THE SELF-EMPLOYED a/k/a NASE, and JOHN DOES 1-20, as follows:

(a)     Determining that this action is a proper class action and certifying an appropriate class as described above pursuant to Rule 23 of the Federal Rules of Civil Procedure;

(b)     Granting injunctive and/or declaratory relief in the form of an Order of this Court (1) enjoining the Defendants from (a) soliciting health insurance policies as endorsed by NASE without disclosing that NASE was established for the purpose of selling insurance and disclosing the proprietary and controlling interest UICI, Mega Life and its related parties have in NASE;

CLASS ACTION COMPLAINT                                                                Page 44

Plaintiff respectfully demands a JURY TRIAL.

Respectfully submitted this the ___30th___ day of October, 2003.

EUGENE GOLEBIOWSKI

By: _____

Richard T. Phillips          MSB #4170
ATTORNEY FOR THE PLAINTIFFS

Richard T. Phillips, Esq.
SMITH, PHILLIPS, MITCHELL & SCOTT, LLP
P. O. Drawer 1586
Batesville, MS  38606
Tel:  (662) 563-4613
Fax:  (662) 563-1546

Bo Russell, Esq.
Attorney At Law
P. O. Box 28
Tupelo, MS  38802
Tel: (662) 620-6367
Fax: (662) 620-6368

ATTORNEYS FOR THE PLAINTIFFS